CHARLES E. EMMONS and LINDA T. EMMONS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Emmons v. Commissioner
Docket No. 2357-82.
United States Tax Court
T.C. Memo 1984-300; 1984 Tax Ct. Memo LEXIS 372; 48 T.C.M. (CCH) 275; T.C.M. (RIA) 84300; June 12, 1984. John O. Franklin, for the petitioners. Marikay Lee-Martinez, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $10,533 in petitioners' Federal income taxes for 1977. The deficiency resulted from disallowance of deductions for employee business expenses and moving expenses and disallowance of a foreign income exclusion. Respondent contends that petitioners are precluded from introducing evidence on the moving expense issue because of a deemed admission that petitioners had not satisfied the 39 weeks of full-time employment requirement for deduction of moving expenses under section 217(c)(2). [1]
FINDINGS OF FACT
*374 Petitioners were residents of Wilcox, Arizona, at the time they filed their petition herein. On or about October 16, 1978, they filed a joint individual income tax return for 1977. On or about June 11, 1979, they filed a joint amended individual income tax return for 1977. Charles E. Emmons (petitioner) is an engineer. In September 1973, he and his family moved to Saudi Arabia. Beginning in July 1975, petitioner was employed in Saudi Arabia by Al-Hajry Contracting and Trading Establishment (Al-Hajry). On a Form 2555, Exemption of Income Earned Abroad, attached to the income tax return originally filed by petitioners for 1977, petitioners claimed bona fide residence in Saudi Arabia beginning September 27, 1973, and ending May 1, 1977. On the Form 1040X, Amended U.S. Individual Income Tax Return, filed by them for 1977 and on a Form 2555 attached thereto, petitioners claimed bona fide residence in Saudi Arabia from September 1973 to September 1978. In the Stipulation of Facts filed in this case on December 7, 1983, the parties have stipulated in part as follows: 6. The Emmons family moved back to the United States to Tucson, Arizona in April, 1977. * * * 7. The parties *375 have agreed that Mr. Emmons is entitled to claim the foreign income exclusion in 1977 for the period running from January 1, 1977 through June 22, 1977 only. Therefore, the dates of employment shown on the Emmons' 1977 Amended Federal Income Tax Return (Form 1040X) [Jt. Exh. 2-B] are incorrect. 8. Petitioner Charles Emmons was employed in Saudi Arabia by Al-Hajry Contracting & Trading Establishment beginning in July, 1975 through June 22, 1977. Petitioners spent $13,943 in moving themselves and their household goods from Saudi Arabia to Arizona. On the original and amended returns for 1977, petitioners claimed employee business expenses of $7,122, allegedly incurred in relation to a business trip taken by petitioner to Saudi Arabia in September 1977, although they maintained no receipts or other records of those expenses. The only income reported by petitioners on their original or amended returns for 1977 was interest income, from rents (net losses) and from two limited partnerships (distributive share of losses), and amounts reported as foreign source income on the Forms 2555 attached to their returns. Neither return reported any employment income from domestic sources. *376 In a notice of deficiency issued October 30, 1981, respondent disallowed the moving expense and employee business expense deductions and the claimed foreign income exclusion. On August 24, 1983, respondent served on petitioners Respondent's First Request for Admissions, requesting, in part, admission of the following facts: 5. Substantiation including receipts for Mr. Emmons' alleged meals, lodging and airfare expenses associated with an alleged business trip taken to Saudi Arabia in September 1977 and claimed by you on your 1977 Federal Income Tax Return (Form 1040) as part of your business expenses does not exist. 6. No lodging, meal or airfare receipts exist for any alleged trips by Mr. Emmons to parts of the United States, including Tucson, Arizona, in the spring of 1977, prior to June 1977. 7. Mr. Emmons was not employed, either by someone else or by himself, in Tucson, Arizona or anywhere else for 39 weeks following his move to the United States from Saudi Arabia in June 1977. No responses to respondent's request for admissions were served or filed prior to November 29, 1983. Purported responses were filed December 1, 1983. They appear to be insufficient, *377 although the late filing precluded a motion to review the sufficiency of the responses under Rule 90(d). By notice served September 14, 1983, this case was set for trial in Phoenix, Arizona, on December 5, 1983. At the calendar call on December 5, 1983, the Court instructed the parties to meet and address problems with the Stipulation of Facts. The parties were further instructed to return on December 6, 1983, and advise the Court whether there was any reason why the admissions should be set aside and whether any prejudice would be suffered if they were set aside. When the case was recalled on December 6, 1983, respondent's counsel was present but petitioners' counsel was absent. Respondent's counsel indicated that respondent would be prejudiced if the admissions were not binding because she could not then subpoena petitioner or cross-examine him at the trial because he was not then in the country. The case was set for trial on December 7, 1983. At no time have petitioners moved for withdrawal or modification of the admissions. OPINION Petitioners have the burden of proving that the determinations set forth in the statutory notice are incorrect and that they are entitled *378 to the deductions that have been disallowed. ; ; Rule 142(a). With respect to the claimed employee expenses of travel, they must satisfy the substantiation requirements of section 274(d) as well as the criteria of section 162.
Petitioners admitted at trial and in their briefs that they have no records that meet the requirements of section 274(d). Thus it is not necessary to decide whether they should be relieved of the deemed admissions as to that issue. They have failed to meet their burden of proof and cannot be allowed any deduction for employee business expenses. Rule 90(c) provides that a fact set forth in a properly served request for admissions is deemed admitted if no response is filed within the time provided and in the manner described in the rule. Rule 90(e) provides as follows: (e) Effect of Admission: Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission. Subject to any other orders made in the case by the Court, withdrawal or modification may be *379 permitted when the presentation of the merits of the case will be subserved thereby, and the party who obtained the admission fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits. Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission by him for any other purpose, nor may it be used against him in any other proceeding. Respondent has satisfied us that he would be prejudiced by the delay, added expense, and additional effort that would be necessary to secure cross-examination of petitioner about his activities during the pertinent period if the admission were withdrawn. See . Petitioners called witnesses and offered documentary evidence at trial and attempted to show that petitioner was employed by Collins International, Ltd. (Collins), a company in which petitioners had invested over $650,000, after his return to the United States in 1977. (He has not claimed that he was self-employed for the requisite period.) Notwithstanding the absence of a motion to be relieved *380 of the conclusive effect of the admission of nonemployment, we heard the evidence in order to determine fairly whether the merits of the case were being subserved. Review of all of the evidence offered by petitioners, however, convinces us that petitioners cannot carry their burden of proof that petitioner met the employment conditions of section 217. The merits of the case, therefore, would not be subserved by relieving them of the admission. Our conclusion is strengthened by the adverse inferences that we draw from the failure of petitioner to appear and testify and the unexplained failure of petitioners or their counsel to produce any corporate records of Collins directly supporting their claims that petitioner was an employee of Collins. Under section 217, [2] no deduction for moving expenses can be allowed in this case unless the move was in connection with the commencement of work by petitioner in Arizona and he was a full-time employee in Arizona for at least 39 weeks during the 12-month period immediately following his arrival there. *381 The 39-week full-time employment requirement of section 217(c) was intended to prevent individuals from taking advantage of the deduction for moving expenses on the basis of temporary jobs. ; H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 125, 184. Thus the employment to which the move is connected must be bona fide and not merely a matter of form. Moreover, in holding that section 911(a) requires that moving expenses that otherwise satisfy the conditions for a deduction under section 217 must be allocated in part to tax exempt income earned subsequent to the move, we have said that moving expenses "to be deductible must have a definite relationship to the production of gross income. It is in those situations where the relationship does not exist that moving expenses are purely personal and nondeductible." . [3] In this case petitioners reported no income from the alleged employment of petitioner, and Mrs. Emmons testified that they never received any income from that employment. The rationale of the Hughes case would *382 seem to extend, afortiori, to this situation and preclude deduction of the moving expenses even though we are not applying a statutory requirement of allocation between exempt and taxable sources of income. Further, in defining employment for purposes of section 217, we said in , that "the foundation of the employer-employee *383 relationship is the concept of a mutual benefit with services being rendered at the direction of an employer in return for some sort of remuneration." The evidence here comples the conclusion that any services petitioner performed for Collins were intended to protect his investment and were not performed as a full-time employee. In addition, the evidence leaves substantial doubt as to whether Arizona was petitioner's principal place of work after the move. Glen Carter, a former employee of Collins, and Mrs. Emmons testified that petitioner spent a great deal of time during 1977 and 1978 on business of Collins. Carter testified that petitioner was an officer and director of Collins and stated his understanding that petitioner was also an employee. On cross-examination he testified in part as follows: Q * * * Do you, in fact, know that he was an employee working full time for Collins International in 1977? A I don't know what a definition of what a full time employee is, I guess. I know his efforts were constantly at our disposal and were utilized. * * * Q Do you know of an employment contract with Mr. Emmons for his work with Collins International? A No. I don't *384 know if I have seen one of those. Q Did you have anything to do with the hiring of Mr. Emmons? a No. Q Collins International? A No. I didn't. Q Do you know the particulars of his compensation with Collins International? A I can't testify as to his particulars. No. I can't. Q And would this include, also, 1978? You would not know in 1978, the extent of Mr. Emmons work with Collins International? A '78. During '78, I was back in the States, then, and I was working, again, with John S. Collins and Associates. However, Charlie was still active. I wasn't active with Collins International at that time but Charlie was. Q But by active, can you tell me if he was devoting his full time efforts to that Company? A No. I can't tell you whether it was full time or not. Q So, you wouldn't know the particulars of his employment with that Company in 1978, would you? A No. But, like I say, I know that he was readily available to do what had to be done and he did it. Q But he could have been working on a part time basis as the need arose he could have worked for them. Is that not true? A That could be possible. Carter also produced a copy of a letter *385 dated April 8, 1977, and addressed to Pima Savings and Loan of Tucson, Arizona, purporting to certify petitioner's employment "as Overseas Liaison for operations in Saudi Arabia" effective as of April 7, 1977, at an annual salary of $40,000. The letter was signed by John S. Collins as president of Collins International, Ltd. Carter testified that John Collins died in 1979. Carter disclaimed custody of corporate records of Collins, indicating that petitioner and petitioners' counsel had previously been in possession of the corporate records. Respondent objected to receipt in evidence of the copy of the letter on the ground that no proper foundation had been laid and, further, that the letter was contrary to the deemed admission that petitioner was not employed for the requisite period following his return to the United States. The objection was sustained. Petitioners also attempted to show petitioner's employment with Collins through the testimony of an insurance agent who reviewed certain medical insurance claims for medical expenses of the Emmons' family incurred between May and November 1977. Mrs. Emmons also testified to payment of the claims. The insurance agent testified *386 that the insurance appeared to be group insurance of the type provided for employees of a small business. Respondent objected to receipt of the insurance records, and the objection was sustained. The balance of the evidence consisted of general statements by Mrs. Emmons that her husband was an employee of Collins and that, as such, he made numerous trips to Saudi Arabia as indicated in a summary of his passport. She testified that: A * * * we had a lot of money involved in Collins International and he needed to go over and see that everything was run properly and where his investment was going and he did work full time not on a part time basis, at any time, that I know of, that I am aware of. He worked as an oversea liaison and they do work from 10:00 to 10:00 or 9:00 to 10:00 or whatever it is, 6:00 to 10:00, and it's not a part time thing and he did not work that way, simply, because he was there for a short time. He worked there and when he came he worked on a full time basis. Mrs. Emmons also testified that petitioner worked for Linear One and Monticello Construction, other companies in which she and her husband were shareholders. Although no objection was raised *387 to her testimony, it is apparent that it was based upon reports from her husband and surmise as to his activities, many of which were conducted overseas and almost all of which were outside of her presence. Her conclusion that he was an "employee" of Collins therefore need not be accepted. Nor need we give any weight to the prior representations made by petitioners or on their behalf in order to obtain group insurance or a home loan. It is not uncommon for a shareholder, creditor, officer, and director of a small corporation to secure group insurance benefits without any bona fide employee relationship to the corporation. There is no evidence that the company investigated the circumstances of the alleged employment before paying the claims. The April 1977 letter signed by Collins in relation to petitioner's loan application, even if otherwise admissible, could be given no credibility because it has been shown by other evidence to be inaccurate as to both alleged employment date and compensation. The job description of petitioner as an "Overseas Liaison" in the letter (and in the testimony) suggests that petitioner's principal place of work was not the area of his residence *388 in Arizona. In summary, the evidence offered by petitioners is inadequate when taken at face value and untrustworthy when scrutinized.
Petitioner makes the further, almost frivolous, argument that the moving expense deduction should not be disallowed for 1977 because, under section 217(d)(2), a deduction may be taken during 1977 if the condition of employment had not been satisfied by the time for filing the return for the taxable year but could later be satisfied. The latest date that petitioner now claims to have arrived in the United States for this purpose is June 22, 1977. Petitioners' original tax return for 1977 was not filed until October 1978. If the condition of employment had not been satisfied by the time the return was filed, it could never be satisfied. At the conclusion of trial, respondent asked to be relieved of the stipulation set forth in paragraph 7 of the Stipulation of Facts, supra, on the basis of testimony from Mrs. Emmons that petitioner's employment with Al-Hajry ended in March 1977. Mrs. Emmons' testimony has the same weaknesses for respondent's purpose as it does for petitioners' purposes. Respondent entered into the stipulation with knowledge *389 of the prior inconsistent statements on the tax returns as to petitioner's period of residence and/or employment in Saudi Arabia.Respondent has not shown sufficient justification for relief from the stipulation. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue. All references to rules are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 217 provides in part as follows: SEC. 217. MOVING EXPENSES. (a) Deduction Allowed.--There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. * * * (c) Conditions for Allowance.--No deduction shall be allowed under this section unless-- (1) the taxpayer's new principal place of work-- (A) is at least 35 miles farther from his former residence than was his former principal place of work, or (B) if he had no former principal place of work, is at least 35 miles from his former residence, and (2) either-- (A) during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee, in such general location, during at least 39 weeks, or (B) during the 24-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee or performs services as a self-employed individual on a full-time basis, in such general location, during at least 78 weeks, of which not less than 39 weeks are during the 12-month period referred to in subparagraph (A). For purposes of paragraph (1), the distance between two points shall be the shortest of the more commonly traveled routes between such two points.↩
3. When, in an earlier case, we ruled that section 217 moving expenses were fully deductible against gross taxable income regardless of the source of income earned subsequent to a move, we were reversed by the Court of Appeals for the Ninth Circuit, to which this case is appealable. , revg. . See also , revg. . In ,↩ we decided to abandon our original position and disallow a deduction of any portion of the moving expenses allocable to subsequently earned tax exempt income. See also .